UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JENNIFER G., | ) | Case No. ED CV 17-984-SP |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION AND ORDER |
| v. | ) | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security Administration, | ) ) ) | |
| Defendant. | ) ) | |

## I.

## **INTRODUCTION**

On May 18, 2017, plaintiff Jennifer G. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). The court deems the matter suitable for adjudication without oral argument.

Plaintiff presents one issue for decision, whether the Administrative Law Judge ("ALJ") properly assessed the credibility of plaintiff's testimony. Plaintiff's Memorandum in Support of Complaint ("P. Mem.") at 3-13; *see* Memorandum in Support of Defendant's Answer ("D. Mem.") at 2-10.

Having carefully studied the parties' memoranda, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that the ALJ provided clear and convincing reasons to discount plaintiff's subjective symptom testimony. Consequently, the court affirms the decision of the Commissioner denying benefits.

## II.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff has a tenth grade education and was twenty-three years old on her alleged disability onset date. AR at 36, 64. She has past relevant work as a security clerk. *Id.* at 57.

On December 14, 2012, plaintiff filed an application for SSI, and on February 13, 2013, she filed an application for DIB. *Id.* at 64, 86. Plaintiff alleged disability due to obesity, depression, anxiety, high blood pressure, and an inability to stand for long periods of time. *Id.* The Commissioner denied plaintiff's applications initially and upon reconsideration, after which plaintiff filed a request for a hearing. *Id.* at 1-6, 110-116,123.

On March 4, 2015, plaintiff appeared and testified at a hearing before the ALJ. *Id.* at 30-63. The ALJ also heard testimony from a vocational expert, Dr. Alan E. Cummings. *Id*. at 56-60. On September 25, 2015, the ALJ denied plaintiff's claims for benefits. *Id.* at 15-25.

Applying the five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since October 1, 2008, the alleged disability onset date. *Id.* at 17.

At step two, the ALJ found plaintiff suffered from the severe impairments of morbid obesity and hypertension. *Id.* at 18.

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set

forth in 20 C.F.R. part 404, Subpart P, Appendix 1. *Id.*

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and determined plaintiff had the RFC to perform a range of sedentary work, with the limitations that plaintiff could: lift and carry 10 pounds occasionally and less than 10 pounds frequently; and stand and walk 6 hours out of an 8-hour workday with regular breaks; and sit for 6 hours out of an 8-hour workday with regular breaks. *Id.* The ALJ precluded plaintiff from climbing ladders, ropes, and scaffolding, but found she could occasionally performing all other postural activities such as kneeling, crouching, crawling, stooping, balancing, and climbing ramps and stairs. *Id.* at 18-19. The ALJ additionally precluded plaintiff from concentrated exposure to wetness and extreme heat, and from even moderate exposure to workplace hazards. *Id.* at 19.

At step four, the ALJ determined plaintiff is capable of performing past relevant work as a security clerk. *Id.* at 24. Consequently, the ALJ concluded plaintiff did not suffer from a disability as defined by the Social Security Act. *Id.* at 24-25.

Plaintiff filed a timely request for review of the ALJ's decision, but the Appeals Council denied the request for review. *Id.* at 1-3. The ALJ's decision stands as the final decision of the Commissioner.

## III.
## STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## DISCUSSION

Plaintiff contends the ALJ improperly found her testimony regarding her symptoms to be less than fully credible. Plaintiff argues the ALJ failed to articulate clear and convincing reasons to discount her testimony.

The ALJ must make specific credibility findings, supported by the record. Social Security Ruling ("SSR") 96-7p.[2] To determine whether testimony concerning symptoms is credible, the ALJ engages in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, the ALJ must determine whether a claimant produced objective medical evidence of an underlying impairment "'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if there is no evidence of malingering, an "ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *accord Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). The ALJ may consider several factors in weighing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation such as a claimant's reputation for lying; (2) the failure to seek treatment or follow a prescribed course of treatment; and (3) a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346.

At the first step, the ALJ here found plaintiff's medically determinable impairments could reasonably be expected to cause some of the symptoms alleged. AR at 21. At the second step, because the ALJ did not find any evidence of malingering, the ALJ was required to provide clear and convincing reasons for discounting plaintiff's testimony. Here, the ALJ discounted plaintiff's subjective

---

[2] "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (internal citations omitted).

complaints because: (1) the objective medical evidence does not support plaintiff's allegation that she needs to elevate her legs throughout the day; (2) plaintiff had a somewhat normal level of daily activities that replicate those necessary for employment; (3) plaintiff made inconsistent statements regarding her level of pain; and (4) plaintiff had routine, conservative, and non-emergency treatment. *Id*. at 20-21.

Plaintiff completed an Adult Function Report on April 28, 2013. *Id.* at 236-44. Plaintiff said she was then 525 pounds, and consequently had difficulty walking and sitting. *Id*. at 236. She claimed to have difficulty walking more than five steps, and thereafter needs a ten-minute break. *Id.* at 20, 241. She stated she was able to care for her two children and herself, doing things like bathing them while sitting, and sitting on a shower seat when she showers herself. *Id*. at 20, 237. She could prepare easy meals while sitting, perform household chores while sitting, shop with an electric cart, and play with her children while sitting. *Id.* at 20, 238-40. She was helped by her mother and the woman she lived with. *Id.* at 237.

At the March 2015 hearing, plaintiff testified she then weighed 425 pounds, with her weight having dropped from 565 pounds following gastric sleeve surgery in October 2013. *Id.* at 19, 48-49. Due to her obesity she has swelling in her lower extremities, a history of cellulitis in her left leg, pain in her joints, and lower back pain. *Id.* at 19, 41-42, 45, 50. During a typical eight-hour period, she would have to elevate her legs for seven hours due to swelling. *Id.* at 20, 54. She said her pain is constantly at an eight or nine out of ten, and the pain causes her to have difficulty concentrating. *Id.* at 19, 47-48. She cannot sit for more than fifteen minutes at a time due to numbness in her legs. *Id.* at 19, 44. She has poor balance issues, can walk for only ten or eleven steps at a time, and is unable to carry a gallon of milk. *Id.* at 19, 43, 45. She can stand for only a few minutes, uses a chair

for showering, and sits when cooking, washing dishes, and doing laundry. *Id.* at 19, 45-46, 55. Her young children have to help her with some of these tasks. *Id.* at 20, 46, 55.

The ALJ found plaintiff's testimony regarding the intensity and limiting effects of her symptoms to be only partially credible. *Id.* at 20. The first reason he gave for so finding was that the objective medical evidence did not support her allegation that she had to elevate her legs throughout the day. *Id.*; *see id.* at 54. The record does show instances where plaintiff had edema in her lower extremities, particularly her left leg. She sought treatment for this on December 17, 2012. A venous dobbler ultrasound performed that day revealed no evidence of deep vein thrombosis. *Id.* at 298, 305. Plaintiff was instructed to elevate and prescribed pain medication. *Id.* at 299. Plaintiff again presented to the emergency room on April 30, 2013 complaining of pain and swelling in her left leg. Another ultrasound was performed, and no abnormality was detected. *Id.* at 281, 289. She was found to have profound cellulitis and treated with antibiotics. *Id.* at 276. At her discharge from the hospital on May 4, 2013, the swelling had resolved and there was again no evidence of deep vein thrombosis. *Id.* On June 17, 2013, plaintiff again visited the hospital, complaining of back pain radiating to her left calf. *Id.* at 414. Another ultrasound was conducted, and deep vein thrombosis was again ruled out. *Id.* at 415, 422. Plaintiff was prescribed medication for inflamation and pain and discharged that day. *Id.* at 418.

The ALJ recounted and cited the foregoing medical records to conclude the medical evidence does not support plaintiff's claim that she needs to elevate her legs throughout each day. *Id.* at 20, 22. Although plaintiff was instructed to elevate her leg on December 17, 2012, there is no indication in the records that this was an ongoing instruction. Based on the evidence, the ALJ concluded there were no "objective or diagnostic or clinical findings that establish the claimant has a

chronic impairment or ongoing swelling that necessitates that the claimant elevate her legs every day," and "no medical source statement or opinion" to support plaintiff's claim that she has to elevate her legs for hours each day. *Id.* at 20. This conclusion was supported by substantial evidence. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Here, lack of medical evidence of plaintiff's need to elevate her legs each day was a clear and convincing reason to reject plaintiff's testimony.

The second reason the ALJ gave for discounting plaintiff's testimony was that she testified to engaging in "a somewhat normal level of daily activity," and her activities required the same capabilities "necessary for obtaining and maintaining employment." AR at 20-21. A claimant's ability "to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting" may be sufficient to discredit her. *Morgan v. Comm'r*, 169 F.3d 595, 600 (9th Cir. 1999). The ALJ here does not explain, however, how plaintiff's claimed daily activities translate into a work setting. The ALJ describes plaintiff's activities as including changing diapers, bathing her children, playing with her children, preparing meals, performing household chores, and shopping with a cart. AR at 20. Plaintiff did testify to these activities, as recounted above, but she testified to doing these things while seated and at times needing help from her young children to do them. *Id.* at 45-46, 55, 237-40. To characterize this as a normal or even somewhat normal level of daily activity is a stretch. A claimant does not need to be "utterly incapacitated." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "[T]he mere fact a [claimant] has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her

credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). It may be that plaintiff's ability to do some of these things shows she could perform a sedentary job, but the ALJ does not explain this, and it is not at all clear how this undercuts the credibility of her testimony.

      The third reason given by the ALJ was that plaintiff made inconsistent statements regarding her pain. AR at 31. At the hearing plaintiff testified her pain is constantly at an eight or nine out of ten. *Id.* at 47. But as the ALJ found, in the medical records, although there are instances of plaintiff complaining of pain, there are many other instances where plaintiff described her pain level as at or near zero. *Id.* at 21, 283, 285, 301, 313, 329, 352, 374, 421, 440. This inconsistency indicates plaintiff was exaggerating her pain at the hearing, and was a clear and convincing reason to find plaintiff's testimony less than credible.

      The ALJ's fourth reason for discounting plaintiff's testimony was that since her alleged disability onset date she has received routine, conservative treatment. *Id.* at 21. "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). This characterization of plaintiff's treatment is largely accurate. As recounted above and by the ALJ, when plaintiff reported to the hospital with back and leg pain, she was variously treated with antibiotics, pain medication, and anti-inflammatory medication. *See id.* at 22. As the ALJ also recounted, plaintiff's high blood pressure was treated with medication; for an ankle sprain she was prescribed ice, a splint, and crutches; and although she was given a wheelchair for her leg weakness and obesity, she was found sufficiently strong for a push wheelchair rather than a power wheelchair. *Id.* at 21-23, 274, 385, 431, 433; *see Tommasetti*, 533 F.3d at 1040 (describing physical therapy and anti-inflammatory medication as conservative treatment). Yet as defendant rightly points out, plaintiff's obesity has been treated, inter alia, with gastric sleeve

9

surgery, which cannot be characterized as conservative treatment. *See id.* at 48-49. Thus, while plaintiff may have received conservative treatment for many of her ailments, her obesity has not been treated conservatively.

While plaintiff's daily activities do not clearly undercut the credibility of her testimony regarding her symptoms, and the ALJ's characterization of plaintiff's treatment as conservative is not entirely accurate, the ALJ did give two reasons for discounting plaintiff's testimony that were clear and convincing and supported by substantial evidence. Plaintiff undoubtedly suffers from some severe limitations, and the ALJ recognized this in limiting her to largely sedentary work. But he did not fully accept her allegations as to the limiting effects of her symptoms, and provided clear and convincing reasons for finding her testimony less than fully credible. As such, the ALJ did not err.

V.

**CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing the complaint with prejudice.

DATED: March 29, 2019

_____
SHERI PYM
United States Magistrate Judge

10